We'll hear argument next in Case 24-320, Soto v. United States. Ms. Flint. Mr. Chief Justice, and may it please the Court, this case starts and ends with the text of the combat-related special compensation statute. Because that statute grants the Secretary concerned authority to settle claims for CRSC, the Barring Act does not apply. A statute grants settlement authority if it authorizes a specific government official to do two things, determine whether a claim is valid, and determine the amount due. Settlement authority does not exist if a statute merely creates a substantive right to payment. The grant of authority to a specific official to administratively determine the validity of the claim and the amount due is the touchstone. The CRSC statute does that. Start with subsection D. It provides for the Secretary of a military department to consider whether a veteran is eligible for CRSC using CRSC-specific procedures and criteria. Because subsection D authorizes the Secretary to consider whether a veteran is eligible for CRSC, it authorizes a specific government official to determine whether the claim is valid. Then subsections A and B say the Secretary concerned shall determine the amount of CRSC owed, meaning a specific official is authorized to determine the amount due. The CRSC statute in this way grants the Secretary concerned all authority needed to determine validity and amount due, so the Barring Act does not apply. Other military compensation statutes that the government has pointed to don't have all of these provisions, requiring a particular government official to use particular procedures to determine an individual's entitlement to a particular benefit. All of this is in the CRSC statute because CRSC is different from a lot of other forms of military compensation. Only veterans who prove that they have a combat-related disability are entitled to it, and Congress provided that the Secretary of the military department where the veteran served is the appropriate official to make that CRSC-specific determination. Other statutes establish substantive entitlements to benefits. They don't designate a particular government official to determine validity of the claim and the amount due. I welcome the Court's questions. And yet the government argues that if we agree with you, there would be a considerable number of other statutes that would confer settlement authority. Right. Yes, Justice Thomas. The government has pointed to a number of statutes that it says have some similarities to Section 1413A. So how do you disagree? I mean, where do you think the government is wrong? Because in your argument, you indicate that there are no other statutes, at least in the defense area. Right. So some of the statutes they point to, such as the basic pay statute, that's the kind of statute I was referring to that establishes who's entitled to the compensation and how much is owed. Those statutes don't say anything about a specific government official determining validity and amount due. Some of the other statutes they point to authorize an official to determine one fact, such as whether a service That too, you know, authority to determine a fact, a predicate fact, that may be relevant to whether a claim is valid and the amount due, but that is not complete authority to determine validity and amount due on a claim. So looking through the statutes they've cited, we've struggled to find, you know, many of them that actually satisfy what we view as the test for settlement authority, an official with authority to determine validity and the amount due. When you say you've struggled, I mean, do you see any of them? I think there are about 50 statutes in the government's brief. I think there are one, two, three, five. Are there any that essentially would be taken down with a decision in your favor? So we identified one in our brief, the death gratuity statute, section 1479. That authorizes a, for purposes of immediate payment of death gratuities, it authorizes a regional command to determine which, whether a beneficiary is entitled to the death gratuity and certify the amount due. That sounds like settlement authority to us. There's one other one that authorizes the military to pay additional subsistence payment if the secretary of concerns determines the requirements for eligibility and amount due. That may be another one. I think I completely agree with you, Justice Kagan. There were about 50 statutes. I've, in my best review while we were working on the brief and this week preparing for today, those are the two that I found that seemed close. Why are we talking about these? Of course, none of these statutes are part of this case, because the government's theory is that the court should not read section 1413A literally because of the risk that these other statutes will create a destabilization in their terms of military pay. If one or two of these statutes actually does confer settlement authority, that doesn't sound like destabilization to me. I mean, if this is even an appropriate way to read section 1413A by reference to other statutes, I don't think that it is. I don't think that's the way we do statutory interpretation. But if it's even appropriate, we haven't gotten to the point of massive upheaval. Well, I think it's appropriate in the sense that if our ruling that this is enough to get past the barring act based on this statute, the idea is that would sort of open the barn door, getting around a statute that is critically important to protecting the public fisc. Now, anytime you say your claim is barred, obviously, you know, there's maybe injustice or something else. But it is a significant opening of the barn door. I mean, is there any statute that has an open-ended mandate to pay that doesn't have — that is similar to this statute? That displaces the barring act? Yeah, yeah. There are at least two statutes that have been cited in the briefs in this case that don't limit the time to file claims, but that are recognized to displace the barring act. One is the Uniformed Services Employment and Reemployment Rights Act discussed by the Federal Circuit in Hernandez v. Department of Air Force. The Federal Circuit in that case noted that that statute displaces the barring act, even though it does not use the term settle, and does not limit when claims can be filed. Now, that statute did say explicitly that claims could be filed before or after its effective date, but the point is Congress did not — Congress clearly did not limit the time that claims could be filed. Another statute that the government has cited on page 25 of its brief is the Postal Service Statute. This authorizes the Postal Service to settle claims against it. That statute, too, imposes no limitation on the time for claims to be pursued. Is there anything else at issue here other than a statute of limitations? In other words, is there any difference between the barring act and 1413a that would matter to anybody other than the statute of limitations, or is — really, that's what we're talking about? That is really what we're talking about, the statute of limitations. And there's plenty of why Congress would have chosen not to limit the time for claims to be filed under the CRSC statute. One of them is — you know, a main — a principal reason for statutes of limitations is for claims to be filed close in time to the facts that support them, to avoid stale claims. That is not at issue with the CRSC statute. By design, this statute authorizes claims to be filed close in time. It is clear that Vietnam veterans, individuals who are injured in combat in Vietnam, could file a claim today, in 2025, and be awarded CRSC, notwithstanding the distance in time. So that — It would be like, I don't know how many hundreds of thousands of dollars that might be. That would be a lump sum, then, that the Vietnam veteran would be entitled to because of the retrospective? The payment is cut off at the enactment of the CRSC statute. So a Vietnam veteran would not be entitled to payment back before the statute. What is that, 2006, something like that? 2008 is the version of the statute under which Corporal Soto is entitled to CRSC. But if you kept going forward, I mean, so let's say 2008 forward, I mean, it could be a lump sum if it were, you know, 40 years, if it was 2048. Well, certainly, Your Honor is right that, you know, as we go forward, there will be more years back to 2008. It's unlikely, however — or impossible, frankly — that we would have claims going all the way back to 2008, you know, forever. These — You mean because of lifespan? Yeah. Because of lifespan, that necessarily limits when people can seek CRSC. And beyond that, of course, this is now a statute that's been around for a while. When it was initially enacted in 2008, you know, people didn't know about it. The population that's seeking these benefits are, by definition, individuals who have a combat-related disability, which, as you, Miki, point out, makes the application process much more burdensome, potentially. This has now been around for a while. We don't have to — we shouldn't expect — Isn't there a lump sum limit on payment? There's not a lump sum limit. Isn't it limited to $10,000? Am I thinking of a different case? You're right. But this lawsuit — the reason the $10,000 limit applies in this lawsuit is that the suit was filed under the Little-Tucker Act, which limits claims to $10,000. So there's an upper limit there. For this lawsuit. Yeah. There could be larger claims under the CRSC statute. I think you started to say that there is something about this situation that might have made Congress think that in this particular situation, unlike most other situations, there's no need for a statute of limitations. But I didn't quite understand your answer to that problem. Sure. What is it? Well, one of the main purposes of a statute of limitations doesn't apply here, because we know that claims are going to be filed related to injuries that occurred potentially decades ago. The form that the Department of Defense uses actually includes World War I as an incident of combat that someone could have been injured in. So we're talking about going back a long way. That doesn't mean the benefits will go back that far. My question is not what can be inferred from the statute. My question is what might have motivated Congress to think — you know, generally we want to have a statute of limitations for submission of claims to the government or for many other things. But in this particular situation, we don't want that. Right. That's what I don't understand your answer to. Another reason, a reason why they might not have wanted it here, is CRSC and one other form of benefit called concurrent retirement and disability pay. These are the two benefits that are exceptions from what's called the ban on concurrent receipt, which means most veterans may not receive retired pay and disability compensation at the same time. But two groups of veterans have this exception, CRSC recipients and CRDP recipients. Now CRDP is paid immediately upon eligibility. There's no application process. Once you satisfy eligibility, you start getting it. Not true for CRSC. Of course, you have to apply. You have to prove that your disability is combat related. Making the benefits go back to the beginning of eligibility in this way makes it parallel to CRDP. CRSC recipients and CRDP recipients are on the same footing because they both get benefits from the beginning of eligibility. What should we make of the waiver provision? In the Barring Act? In other words, it's not strictly limited to six years. There is a provision that authorizes waivers to go back further. And I'd just like you to address that, what you think or how that factors in, if at all. Well, that of course only applies to claims that are settled under the Barring Act. Of course, we don't think our claim is, so the waiver provision doesn't come into play. And of course, it's quite different to have entitlement as of right to payments going back to when eligibility began. That's quite different from having the opportunity to pursue a discretionary waiver under a statute that, in our view, doesn't apply in the first place. On the how to read the statutes together, the government points to the GAO Red Book, which talks about this and then says, going back to 1982, Red Book says, in the absence of legislation expressly placing the authority elsewhere, claim settlement jurisdiction under 3702 controls. I think their point there is that that was the accepted understanding that Congress would have been operating under. And so if we're guessing or speculating about what the language means, that probably doesn't satisfy what the settled understanding of express displacement was. Do you want to respond to that?  So I respectfully disagree with the suggestion that express displacement isn't satisfied by the text of 1413A. So 1413A speaks expressly about authorizing the secretary concerned to determine the validity and amount due on claims. Now, it does not use the word settle. It does use the word determine. It doesn't use the word settle. But nobody thinks that the government's brief makes this clear. The Federal Circuit agreed. Nobody thinks the word settle is required for another statute to displace the Barring Act. I don't think that's what the GAO Red Book from 1982 was saying. I don't think it was saying the word settle was required. And if it was, I think it's, you know, mistaken. That's necessary. That makes sense because of this Court's case law saying we don't use magic words requirements. Now, the government has suggested, okay, you don't have to use the word settle, but you should use a word more like it than the words in the CRSC statute. Well, in this Court's recent cases in Locke du Flambeau from a couple terms ago, in Kurtz from last term, in the sovereign immunity context, the Court has said, that's wrong. I mean, first, Congress does not have to use a particular word. Second, even if Congress has used a particular word in a variety of statutes, like, you know, there are some statutes that use the word settle, that does not foreclose Congress from using a different word the next time. We don't require. Kagan. Which word are you using? I mean, which word are you pointing to here? Because whatever, you might, yes, we don't demand magic words. But this is a peculiarly indirect way of giving settlement authority to the Secretary Concerned. Well, subsection D, I think, is actually fairly direct to respectfully disagree. Yeah, I mean, subsection D, I mean, that's your best subsection. But even there, the Secretary Concerned kind of comes in midway through. It's really a provision about the Secretary of Defense stating general standards. And then it seems to sort of assume that the Secretary of the Military Department has some role in this, but without really giving the Secretary of the Department the authority to settle. I read subsection D differently. First, the fact that it authorizes the Secretary of Defense to establish procedures and criteria to resolve CRSC claims, that alone is significant. That tells you we're outside of the procedural world that applies to the Barring Act. There is a whole set of regulatory structure, regulatory provisions dealing with claims settled under the Barring Act, and they don't apply to CRSC claims which are settled under these specific procedures. Second, subsection D says veterans apply, that's submit a claim, and their application is to be considered by the Secretary of the Military Department or the Secretary Concerned. That's fairly explicit. It is to be considered by the Secretary Concerned. And then that consideration is determinative because subsection A tells the Secretary Concerned to pay eligible retirees, eligible under the consideration of the Secretary Concerned under subsection D. Then amount due, that comes right out of A and B. Subsection A says pay an amount determined under subsection B. The Secretary Concerned shall pay an amount determined under subsection B. Subsection B says determine, here's how you determine the amount to be paid under subsection A, paid by the Secretary Concerned. So those provisions work together to establish it's the Secretary Concerned determining the payment amount. And another thing about payment amount, subsection D says it's the Secretary of the Military Department, the Secretary Concerned, who determines which disabilities are combat related. That determines payment amount too. Subsection B1 says explicitly payment is based only on disabilities that are combat related. So the determinations of the Secretary Concerned under subsection D, which are, that's an authority that is stated explicitly for the Secretary Concerned under subsection D, those determinations are dispositive. They show- What about the situation where, the situation where the veteran owes a lot of money to the government? Can the payment amount be regarded as having been settled before that offset is taken into account? Well, the CRSC statute is about settling claims for CRSC. So the result of that process is how much CRSC is this person owed? Now, if the, if they're owed, let's say, you know, $100, and if they in turn owe $500 so that the entire $100 payment amount is offset, that means they won't be paid $100 in cash. Instead, they will be paid $100 in reduction of their otherwise existing debt. That goes to payment, not to settlement. On that though, the government makes a big deal about offsets in its brief, and understandably so. In your understanding of the statute, who does the offsets, how are they accounted for? Because I think it's one thing to determine the validity of the claim. It's another thing then to say whether they're offsets. And then, and then there's a third thing still to say, pay. And you've got in the statute a good deal of language, as you pointed out with Justice Kagan, on the first step, determining the validity of the claim. And maybe on the third, the authority to pay. But somebody's got to do the business in the middle. And who does it and how, under your understanding of the statute? Right. So, the business in the middle first includes the amount due on the CRSC claim. And that is part of settlement. I got that on one. Oh, that's on one. I'm giving you that, all right? But two, the $500 that the veteran happens to owe the department for whatever reason, who does that and how before the secretary of the relevant military department is authorized to pay? Right. The CRSC statute doesn't specify who needs to do that. That's what I'm asking the question. The way it works in real life is DFAS does that. The guidance actually even talks about this context. The guidance that the Secretary of Defense promulgated for CRSC claims. The guidance says that the DFAS considers offsets in the context of paying claims. I was looking at all the statutes that the government concedes, like the uniform, et cetera, that don't use the word settlement. None of them talk about offsets. I'm not sure the Bering Act talks about offsets. That's exactly right. None of these statutes talk about offsets. All of the offsets have been imposed by regulatory direction, correct? Yes. Or there are some other statutes that refer to offsets. But you're exactly right, Justice Sotomayor. None of these statutes addressing settlement deal with offsets one whit. That's not part of the settlement process. At least, if that's going to be an issue, you're not raising it. You accept that the Secretary of Defense's procedures to offset CRSC benefits applies. Right. Offsetting procedures, if they apply, I don't have any quibble with that. OK. You're just saying that this is not a material omission from this statute, from the standpoint of determining whether it confers settlement authority. That's exactly right, Justice Jackson. And as Justice Sotomayor's question aptly noted, one way we absolutely know it's not a material omission is that there's no such reference in the Bering Act either. Offsets are simply not part of establishing settlement authority. Can you help me just to understand a pure factual and legal point? Because I'm trying to understand it. In the Bering Act, when there's a six-year statute of limitations, do we know from when it accrues or does it work backwards from the person's application? It works. The six years works backwards from the time the application was filed. So you get six. So we don't have to care. It's not a prospective thing, like when did it start accruing. It's just whenever the application comes in. If there were a statute of limitations applicable here, it would just go back six years. It would just go back six years. We all agree Corporal Soto is entitled to compensation going forward and going back six years. It's just that we think he's entitled to an additional 30 months because the six-year cutoff under the Bering Act should not apply. But he can't start the application process until he's gotten a VA rating. That's right, a VA rating. So it doesn't really matter when it occurred, when the injury occurred. He has to apply for the VA rating and he can't control how long they're going to take. That's right. And so if the VA has a huge backlog of which exists right now, he's now barred from recovery, not from his own fault, but because of the VA process. That's potentially true. In our view, we think eligibility begins at the effective date of the VA rating decision rather than the date the rating decision is issued. Either way. Either way. Whatever the effective date. I don't know what that means because I don't know if they say it and then put it in writing or not. But the point is that unlike other benefits where eligibility is determined by the incident when you're injured, here it's outside of your control when you can file. That's exactly right. It's in the VA's control. But there is a could be in some cases a pretty significant difference. And I'm just trying to understand it. Here we have 30 months if we count back six years. That is the difference between your preferred rule and the government's rule. That's right. I suppose it could be that someone doesn't get this rating from a long, long, long time. And the count back to when the statute was effective, which is the date that you say is the starting point in terms of how much it covers. For people who were eligible before the satisfied other requirements for eligibility. Correct. So it could be a long time in some instances if there is no statute of limitations operating. And I guess I'm circling back to Justice Alito's question of are we certain that Congress intended for that entire span to be covered? And why would you think in this circumstance Congress would want that? Well, of course, the best indication of Congress's intent is the text. In Section 1413A, it is best read to authorize determination of validity and amount due. Section, the Barring Act, if another statute authorizes that, the Barring Act doesn't apply. So that's the clearest indication. But as I discussed with Justice Alito earlier, there are ample reasons why Congress would have chosen in this context not to use that six-year statute of limitations for this population. Thank you, Counsel. Justice Thomas? I must be dense on this point, but I don't know what those ample reasons are. Maybe you can tell me. Is there some reason to think that in this situation, the claimant is less capable of realizing that the claimant is eligible for this than in other situations? So that there's something similar to the tolling rule that would suggest that a statute of limitations is not appropriate here. That's what I'm, I'm not asking for this as a policy matter. I'm just trying to figure out why Congress might have wanted to do what you think they clearly did in the statute. Well, other forms of military compensation, the most relevant one is CRDP, automatically are paid as soon as the veteran entitled to it is eligible. Treating the CRSC statute this way makes it the same. So Congress views CRDP as appropriately provided to a veteran every month in which he's eligible. That same application, that same policy, same congressional intent applies here too. All right. Thanks.  Is there something special about the conditions that would make a veteran not know he or she is eligible? I mean, there are certain P-D-S-T you may not know. There are other conditions you may not know are militarily related, correct? Absolutely. And I mean, one thing that separates CRSC from other forms of compensation also is the application requirement. So a veteran needs to know that this benefits them. And of course, this is only relevant to veterans, as Your Honor was suggesting, who have combat related disabilities, including disabilities like PTSD, which as our amici point out, is a particular problem for this kind of bureaucratic interaction. So the need to apply is unique to this statute. That sets it apart. And the need to apply is also especially burdensome to the population that the statute exists to serve. So not imposing this time limitation for this unusual form of statute, for this particularly deserving, but by definition, combat related disabled population makes perfect sense to me. Thank you. Justice Kagan? Justice Gorsuch? On page 34 of the government's brief, they say that other than this case and one other federal claims case, there's no comptroller general, Department of Defense, or judicial decision that finds section 3702B1's limitations period inapplicable to any form of military compensation in Title X or Title 37. Is that accurate? I don't have a basis to dispute it. And then they say from there that you're not suggesting that GAO and the Department of Defense have been wrong to apply that limitations to all those other forms of military compensation. Is that accurate? That's right. We think this statute is written the way it is to displace the Barring Act. And that's part of why we don't think the 50 statutes that we talked about earlier, Justice Kagan, are much of a concern here, because this statute is written differently from those other statutes. And we're not arguing that this is a broad-based change. Right. And then they, we've repeated this, but then they say you're viewing this as unique, and therefore you need a clear statement. But we've covered that ground, so I'll let you go with that. Thank you, Justice Kagan. Thank you. Justice Barrett? Justice Jackson? And it's my understanding that there are other circumstances, other statutes in the Veterans Disability Area that don't have statute of limitations. Is that right? I'm not aware of one. There definitely are other statutes that displace the Barring Act that don't have statute of limitations. That displace the Barring Act and therefore allow claims without a statute of limitations. Right. It is not the case that every single statute that has ever displaced the Barring Act has its own separate statute of limitations. That is not the case. Other statutes that displace the Barring Act that don't use its six-year statute of limitations also don't impose their own statute of limitations. So CRSC might be the only disability compensation, military disability compensation statute that has been found to apply in that way. But it's not the only statute that applies in that way. Thank you. Thank you, Counsel. Ms. Flynn? Mr. Chief Justice, and may it please the Court. The text of 3702A1A expressly provides the claims of military service members for various forms of unpaid compensation are to be settled under 3702 and its six-year limitations period. Petitioner is nonetheless arguing that claims for this form of military compensation, CRSC, are not subject to that time bar because the CRSC statute contains its own settlement mechanism without providing its own time limit. Text, history, and context resolve this case. Dating back 200 years, claims for all kinds of military pay and benefits, including retired pay, have been settled under 3702 and its predecessors. And since 1940, those pay claims have been subject to the time bar. Congress enacted the CRSC statute, which essentially restores retired pay for some members, against that uniform practice. Yet Congress did not use any of the clear hallmark language that had been recognized to displace 3702, including by simply using the word settle or simply providing a different timing rule. It follows that the CRSC statute should be read harmoniously with 3702 and that statute's limitations period, which the Secretary of Defense may waive. Petitioner instead asked this Court to parse the various details that the CRSC statute does cover and conclude that they implicitly add up to what would be a highly unusual result, a congressional intent to subject the Department of Defense to open-ended retroactive liability. But the mine run of military pay statutes include the same kinds of details. Indeed, that's true of the statutes governing the death gratuity benefit, which Petitioner has agreed in his reply brief, and I believe my friend agreed today, would convey independent settlement authority under his test. But we know that can't be right because then Congress's recent amendment of the death gratuity statute to provide a time limit applicable only to minors would be inexplicable. That illustrates that Petitioner's function-based standard does not capture congressional intent and threatens destabilizing results. I welcome the Court's questions. JUSTICE KENNEDY Other than using the word settle, how would you draft the statute, CRSC statute, to confer settlement authority?  HENDRICKS So I think if, as Congress had provided in the very first subsection, that the Secretary of Concern may settle and pay, that would be the straightforward way to do it that it had used in other military contexts. I think other kind of hallmarks— JUSTICE KENNEDY Let's leave the word settle out. How would you draft it? You say in your brief that there's no magic words requirement. So what words other than settle would you use? HENDRICKS So we believe that there are hallmark formulations that Congress has used, often just the word settle, but there are other examples, like speaking of claims being allowed or disallowed, or referring to a finding being final and conclusive. But we do reject the idea that there is a function-based test where you sort of look to whether the details of program administration provided in a statute add up to something that looks like making determinations relevant to eligibility or determinations relevant to how much will ultimately be paid out. We just don't think that's how Congress has acted when it wants to displace the sort of specialized accounting authority. And especially here where, as Justice Kagan sort of alluded to, the upshot of having 3702 apply in this context really is just whether or not the six-year time bar applies. You would expect Congress to have just said something about what kind of timing rule it wanted, either for retroactive benefits or otherwise. And we just don't see anything about timing in this provision. JUSTICE SONIA SOTOMAYOR So is your argument that the only thing that gets picked up under your rule is the time bar? In other words, are all of the other CS, whatever the name of the statute is, are all of the other statutory requirements still in effect? MS. KAYESS Of the CRC statute? JUSTICE SONIA SOTOMAYOR Yeah.  KAYESS Yes. We agree that everything in the CRC statute is read harmoniously with 3702. The other key thing that 3702 does, which might be more important in other contexts, is that it says who has ultimate authority for settling claims. In the military context, just as a matter of how things work on the ground, there's so many cross-delegations between the Secretary of Defense and the Secretaries Concerned. For instance, the Secretary of Defense has delegated his 3702 settlement authority to process claims to the Secretaries Concerned, but in turn, the Secretaries Concerned have delegated their accounting functions, so that's the calculation and payment functions, over to DFAS, which is at the DOD level. So here, this dispute really does just come down to whether the statute of limitations, which DOD has interpreted as a sort of an ability to go back a certain number of years in awarding retroactive benefits, whether or not that applies to this kind of military competition. JUSTICE SONIA SOTOMAYOR Doesn't it also come down to the meaning of  Because in order to harmonize these two statutes, I think you have to look at the fact that the Barring Act says, except as provided in another statute, all claims shall be settled as follows. And so we have to determine whether the other statute actually confers settlement authority. And I guess I'm just trying to understand what your test or criteria are for settlement. Your friend on the other side was very clear that settlement, in their view, is determining whether a claim is valid and determining the amount due, both of which occur under the GRSC statute. You seem to suggest that something more is necessary. Maybe it's the words. I don't know. But what more is necessary to settle a claim from the government's perspective? MS. RAHMAN So what needs to be located in the statute is one of those hallmark formulations or for Congress to otherwise make its intent unmistakably clear that it wants to displace the 3702 regime. JUSTICE SONIA SOTOMAYOR Well, why isn't this clear enough is my question. This isn't the most obvious way to convey settlement authority. But on the other hand, the D provision does say to a retiree, you know, you may apply to the secretary of a military department to make the eligibility determination. And then subsection A says that secretary shall pay the appropriate amount to a person who has been found eligible. So it seems as though even though it's a little bit backhanded in the way this is phrased, you have everything that's necessary to convey settlement authority here. MS. RAHMAN So I have a few responses to that. The first is that this Court was very clear in Illinois surety that payment authority is different from settlement authority. They're considered different. JUSTICE SONIA SOTOMAYOR Well, I'm just saying you have both. You have the secretary shall pay, and you also have a statement that makes it clear that the way this is expected to work is that the retiree applies to the secretary concerned to determine eligibility, so determine the validity of the claim. MS. RAHMAN And what I'd say about the application is that is also just, I'm going to rely heavily on contextual considerations here, but a statute, the military pay statute that involves an application is also not unusual. And so my point is that Congress would not have thought that adding that detail, along with the other details that it talked about with the MS. RAHMAN I'm sorry, could you say that again? What's not unusual? MS. RAHMAN To have an application process that Congress provides. I mean, we discussed this in our brief. JUSTICE SONIA SOTOMAYOR An application process, but this specifically says go apply to the secretary of the department, right? MS. RAHMAN Yes. JUSTICE SONIA SOTOMAYOR He or she is going to be the one who's going to determine your eligibility and thus is going to determine the validity of your claim. And once it says that, like, really, what more do you need other than something along the lines of, well, you should have said it in the active voice rather than the passive voice or something? MS. RAHMAN So I can point to, I mean, at least one other statute, the basic needs allowance. This is at 37 U.S.C. 402B. B is part of the section heading that also has an application required. And that one is also one that says the secretary concerned shall pay to each member who is eligible under subsection B a basic needs allowance in the amount determined for such member under subsection C. I think that meets all of what petitioner is saying is necessary, which I think basically just comes down to whether a specific person is named when you're setting forth eligibility and calculation rules. I'd also say that it's a little, I mean, a little odd for Congress to say we're displacing the Barring Act by, you know, naming a particular Department of Defense official to be making these determinations when before this was transferred to the Secretary of Defense, the 3702 authority, GAO was the one making the, who had the 3702 authority. So there was always kind of a divergence between the sort of administration of this pay and these organic statutes setting, authorizing the forms of payment and GAO with this authority under 3702. But as came up earlier, there was no finding that any other form of military pay or compensation was not subject to the six-year time bar. Counsel, what is the concern you have broader beyond this particular statute? I mean, to be eligible for benefits here, you have to have gotten a Purple Heart, be disabled as a result of armed conflict, hazardous service, performance of duty under conditions of war. I can't believe there are people in Congress saying, you know, we're giving too much money to Purple Heart recipients. So let's tighten it up. I mean, what is the, there must be a bigger concern that the Department is worried about. Yes. And so, you know, as I think we suggested in our brief, we're not saying that or suggesting there might be a staggering amount of liability based under this particular type of benefit. And there is also a waiver authority where this time bar can be waived for individuals with CRSC claims or other claims. What I would submit that our primary concern here is this kind of, if there were an adoption of the kind of function-based test the petitioner is asking for, where you look statute by statute and say, well, is there an eligibility termination not in the passive voice, but assigned to a person? Is it a sufficiently important eligibility determination? Because I took my friend to say some are not sufficiently important. Do we think this calculation function is assigned to that person or not? We might be in a world where we have lots of different military paying compensation statutes that are now to be awarded. I was going to say you might be, but is it the judgment of the Department that you are? I mean, these aren't, it's not a magic words argument. I understand that. But, you know, they do have words here that are pretty close to the ones that are in the Barring Act. So we, I can point this court to six statutes that I believe meet petitioner's test, at least as clarified in the reply brief. I imagine even if I'm wrong about that, there would certainly be litigation about it. There will be litigation about other provisions that start to seem similar enough to this one or the next one that gets decided. And then we're in a world where we just really can't predict what kind of open-ended retroactive liability the Department of Defense is facing, which to repeat what I said earlier, we are aware of no other military payer compensation statute that opens up the Department in that way. And so I, you know, we, we want to be... You're not aware of anyone that opens the Department in the way that you argue this one does? Right. To open-ended liability for payments in the past with no kind of time bar. So you say there are six. Your friend says there are two. I want to hear what the six are and do all of them contain statutes of limitations or some of them lack them too. So the six provisions I'm pointing to. So the first is the death gratuity statute, which is one my petitioner... I'm sorry, say that again. Sorry. The death gratuity statute. So those provisions are at 10 U.S.C. 1475 through 1480. You don't need to cite them. Just give them to me. So death gratuity subsistence, I think Ms. Flint also suggested. See, I'm not sure. You're not sure about that one? I'm not sure about that. So I guess I'd make it seven. Just quickly, let's tick off the others. So a certain form of the disability retirement pay. This is at 10 U.S.C. 1204. The next would be disability severance pay. Those relevant provisions are 10 U.S.C. 1203 and 1216. Involuntary discharge separation pay and 10 U.S.C. 1174. And one of the forms of transitional compensation to dependents of members separated for dependent abuse, the exceptional eligibility provisions. And those are located at 10 U.S.C. 1059L. But if I could go back to the death gratuity provision. But before we get to that, do those contain statutes of limitations or not? None except for the death gratuity provision, which is the one where I want to make the point about how that one shows that petitioner's test can't be right. Okay. Go ahead. So that one does have a statute of limitations that Congress added in the 2025 NDAA, I believe. And before it had no statute of limitations. And the understanding was that the barring act applied. And Congress then added a statute of limitations that is only applicable to beneficiaries, so survivors who are under the age of 21. It essentially gives them more time. That would be inexplicable if Congress did not understand that. I understand the point. And I just want to be clear. Is the government taking the position that should it lose in this case, it will also lose in those six other cases? Or are you reserving the right to distinguish them? We are absolutely reserving the right to distinguish them. Our point is more that I certainly think there would be questions about them. And there would be sort of fine-tuned parsing of whether, you know, do you have to look outside of this provision to find something else? But we're down from 50 to six or two. Well, it also just depends, I suppose, on what you find to be the relevant line. So here, I mean, I'm not sure that this statute even meets petitioner's test. Because one of the things that petitioner is saying is, or my friend is saying, is that the responsibility to calculate the amount has to be specifically assigned to a named person. I'm not sure the statute does that. It speaks in the passive voice about the determination and determined. And so if we think this one counts, then is that close? You know, then what does that mean for the other one? Can I just step back for a minute? Can we rephrase the question presented here to say that a claim for compensation under 1413A would count as a claim for retired pay under the Barring Act? Yes. Do you think we were right to do that? Is it clear that the claim for this kind of compensation is retired pay? Yes. So the Federal Circuit found this in its decision. And of course, I want to just preface that I also understand this Court to have taken this issue out of the question presented. But the Federal Circuit's reasoning, which we agree with, is that the way CRSC works is that because of the concurrent receipt bar that my friend referenced, the background rule is that some members who are entitled to both retired pay and disability compensation have to waive some amount. And that usually means they're waiving retired pay because disability compensation isn't taxable. What this is saying is that that rule still applies, but we're just going to give you a separate income stream to make up for a portion of that that's connected with a disability that's combat-related under this definition. And so it essentially restores retirement pay that these members would have otherwise had to give up. It's calculated, tied to what retired pay they would have otherwise had to give up. And it's also paid out of the Military Retirement Fund, which is how retired pay is paid. So we think those considerations mean this is a claim involving retired pay within the meaning of the Federal Circuit. And is there any argument that the litany of other statutes that you cite might not fall within the Barring Act for that separate reason? That, you know, the Barring Act applies to pay, allowances, travel, transportation, you know, et cetera, on the list? I mean, but you think they all would qualify, under your understanding, under those, but that the implications of this would be it's just entirely inapplicable. I guess what I'm saying is, is there a reason to think the Barring Act might not apply to those anyway because they don't fall in these categories? I don't think there is a reason. First is that, given the phrase involving, you know, it's not strictly those categories, but the basic needs allowance is an allowance. I talked about disability retirement. I think that would be considered involving retired pay. The disability severance pay is pay. So you see the Barring Act is just sweeping very broadly the word involving these categories that would pull all those things in anyway. Yes. And that has been the background understanding against which Congress would have been legislating in 2002 and then 2008 when it created and expanded this program. You have said that if the court were to disagree with you about this particular statute, the government would argue that there are grounds for distinguishing those other six that you mentioned. Is there one feature that would provide the basis for that distinction? Or if not, on what ground would you distinguish those? So we would have to take it case by case and look at the, you know, context of that benefit and what came. So I mostly am just saying that I don't know what arguments we would make. I'm sure we would try to find ways. But I think Your Honor is asking is there sort of a lowest common denominator that would make a ruling narrow? And I'm just not really sure there is. I suppose you could write an opinion that says, you know, Petitioner flagged six aspects of this statute. All six have to be present. But if you say something like here there are these six features, we're not saying what's enough in the future, then I think we're off to the races. And so I'm not sure. Maybe an application might be a narrowing device. But even then we pointed to, I think, five others in our brief. I pointed to one here today. I'm not sure. I'm sure there might be some applications required by regulation. So I don't think that would meaningfully narrow it. And those six statutes, do they deal with big programs, small programs? I mean, what's the extent of the liability that the government is concerned with here? Well, the death gratuity benefit is $100,000 to a survivor. I think I can't make very firm pronouncements about what kind of dollar figure we're talking about here. But I think the basic needs allowance is a pretty common type of benefit. Disability severance pay. And I'd also just say that we're not saying the list stops here. Again, because we just don't totally know how once you start going one by one through 10 USC, 37 USC, like through those titles of the US Code, what else could be found by an authority to look close enough. I'm going to go back through all seven of them at some point. Sure. But were these part of that list of 50 you gave in your brief? So the basic needs allowance, we cited, I think, 402 sub a. And I'm citing b. So we did not cite that one. I believe the rest of them, we did have them in the various. I know I didn't do it, but my law clerk did it and told me that the two qualifications that the other side puts forth are, does the statute determine the validity of a claim? Who's going to do it? And who determines the amount due? And she claims, confirmed by my law clerk, that there were only potentially two of those 50 odd statutes where both features were present. Do you dispute that? Are you claiming that in all seven of these, those two features both are present? I think if this statute counts, then there's certainly at least, want to be careful of, again, not trying to concede that we would lose that case if it were to come up. But I think, for instance, let me, let me take one where I think, I believe petitioner disputed whether it would count under their test in their reply brief. That's disability severance pay. So we understand 10 U.S.C. 1216b4, which says the secretary concerned shall have all powers, functions, and duties incident to the determination of this chapter of payment of disability severance pay. We think that sounds like a calculation authority. I gather petitioner thinks maybe it isn't, but that seems as close to a calculation authority as what we have here in subsection A, where it says determined. This has the secretary deciding eligibility and then determining the amount. Sorry. And so that same provision also says that they, I lied to that part, so I was focusing on payment, but that same provision says the secretary concerned shall have all the powers, functions, and duties incident to the determination of this chapter of the entitlement to and payment of disability severance pay.  Thank you. But my point is really just to show the kinds of debates we might be having under the kind of function-based tests, whereas before, when you do have just looking for certain hallmark language or, I mean, more straightforwardly to just have a timing provision, since that is the upshot of this being a settlement mechanism. But there are statutes, you say, that everybody agrees displace the barring act that don't have a timing provision. So I'm trying to understand the relevance, in your view, of the statute of limitations. Are you saying that you cannot be this kind of settlement statute unless you have a statute of limitations? I'm not saying that. The two examples, though, that I think Your Honor is referencing is USERA and the Postal Service Statute. So those don't have to do with military pay or benefits. The USERA provision does speak to timing. It's a provision giving to the MSPB the authority to adjudicate complaints under USERA. And there's another subsection there that talks about the MSPB ordering various forms of relief, including monetary relief. And then the provision at issue says that the MSPB will adjudicate complaints without regard to whether they accrued before, on, or after the effective date of that statute. So it does speak to timing. And it speaks to timing to say, don't worry about it. And so I'm trying to understand the extent to which you're saying that a statute can only confer settlement authority and thereby displace the barring act if it has a statute of limitations or, I guess, speaks to timing. Like, what is the relevance of the speaking to timing as to whether or not this is a statute that confers settlement authority? I thought those were two different concepts. We're not saying that a statute has to have that. But they do tend to go hand in hand, that you have a provision talking about the settlement of claims or the submission of claims to an entity and then providing a timing rule. For instance, like the Military Claims Act, the Foreign Claims Act, other military provisions that we cited in our brief that have been found to displace. In the Barring Act itself, it has two separate references to accept as provided, which makes me think that Congress was thinking about those as different concepts. That except as provided, the government shall, elsewhere, the government shall settle claims in this way. And then later, when it talks about the particular statutory statute of limitations, it has another reference to accept as provided, which it wouldn't have needed if the whole thing turned on whether or not you talked about timing or whatnot. Right. And we're not saying that, absolutely, you have to have a timing rule. But we're just saying they do tend to run together. Because when you are setting up a claim settlement process, you know it. They do. But I guess what's really hard for me about your argument is I can't really figure out exactly what it is you think we need to be looking for in order to say the Barring Act applies or it doesn't. You say something like the word settle, but it doesn't have to be the word settle, but it can't be a function test. It has to be words. I don't know what that means in real life. I mean, the other side says what you're looking for is do you have a statute that allows authorizes a particular entity to determine whether the claim is valid and determine what the amount due is. That's a pretty straightforward thing we're looking for. And I appreciate that you say we can find it in various other statutes. But at least it's clear as to what it is they say counts as settlement authority. Yours, I'm not so sure. So we are saying you need to look for the word settle or other hallmark formulations that otherwise get across Congress's intent to convey this kind of specialized accounting authority. And the other thing I would say is just that because the function-based test essentially looks for various facets of program administration, we just know that can't be the right standard because Congress assigned under the Barring Act the authority to settle claims under all of these military paying compensation statutes. Because of that conferral of authority in 3702A1A, we just know that Congress wasn't envisioning that the mine run of military pay and benefit statutes would be something that would displace this regime. Because Congress specifically envisioned in 1996 when it added this language that this would be the authority under which those kinds of claims should be settled. So I agree that I'm taking, I'm looking at what Congress could not have thought counted to say that means that petitioner's test can't be right. But I think that is a very strong contextual consideration, at least in the context of military statutes. When you say, keep going, sorry. I'm finished. When you say hallmark formulations, just so I make sure we have those in mind. Yes. So, and these can be seen in the GAO Red Book, the most recent version on this issue, as well as the 1982. So settle or settlement of claims, claims being allowed or allowable or disallowable, reference to either the settlement or to like certain findings or determinations being final and conclusive. And then one is for some executive branch entities, the authority to sue or be sued or determine the nature and character, or sorry, character and necessity of their expenditure. And that's in the GAO Red Book now and in 82? Yes. Somewhere. Yes. And you can look at the statutes. And what's the, much as I enjoy talking about the GAO Red Book, what's the relevance of that? Would you summarize that for us? Yes. So GAO used to be the entity that had this authority. So they had to figure out what are these regimes that are going to displace our authority. And GAO was doing that even before Congress added the except as otherwise provided by law language in the recodification in 1982. And that's why we pointed out that the GAO Red Book was the first edition came out in 1982, right before Congress added that language, which Congress said in the recodification, it wasn't intending to make a substantive change. That's in the law itself. And also the revision note said that this except as otherwise provided by law language was intended to just be clarifying. So it's that the GAO was the one sort of implementing the statute for a long time. And the comptroller general decisions are what we have as authorities in this area of what counts. And so that's why we're relying on sort of the background administrative practice against which Congress would have led. And the idea is Congress would have spoken more clearly is your point, general point there. Yes. And the CRSC statute, yes. And the other point, there's no other form of military compensation where the limitations period is inapplicable, correct? Yeah. Where there's no limitations period and there is a mandatory open-ended liability. Thank you, counsel. Anything further? Thank you. Rebuttal, Ms. Flint. Thank you. I'd like to start where you started, Justice Thomas, and you followed up, Justice Kagan. What's missing? The statute authorizes determination of eligibility. It authorizes determination of amount due. So what's missing? I think the answer I heard was a hallmark formulation. We agree it doesn't have to be the word settle, but it has to be a hallmark formulation. And then my friend read examples of words that, in the government's view, sound hallmark enough. As Justice Jackson's questions aptly call out, I don't know what counts as a hallmark formulation. The way that this Court has instructed to read statutes is read the words that are written in the statute. Don't say there's a small group, one or about a dozen, I think it was, acceptable terms. And if Congress uses these terms, OK. And if it doesn't use these terms, then we're not going to interpret the statute to have settlement authority. That's not how this Court has read statutes. The Court rejected a very similar argument in Lac du Flambeau about whether the bankruptcy code abrogated tribal sovereign immunity. The argument was that other statutes had made express reference to tribal sovereign immunity, and the Court said, Congress is entitled to do it differently this time. That might be the most straightforward way. That might be arguably the most obvious way to abrogate tribal sovereign immunity. But that doesn't mean Congress is foreclosed from doing it using different terms. Same here. Maybe hallmark formulations, settlement or otherwise, would be the most obvious, most straightforward way to write the CRSC statute. But that sure doesn't mean it's the only way. The way to interpret Section 1413a is to read its text to determine whether it authorizes an official to determine the validity of CRSC claims and the amount due, and all of that is there in the statute. Now, to talk about the other statutes that my friend has referred to, of course, we started in the briefs with a few or more dozen. We're down to, I think it was six or seven today that the government thinks may be implicated by application of our test. We've only found two, the same as your law clerk, Justice Sotomayor. Look, maybe these statutes do displace the Barring Act. If a statute has language that authorizes an official to determine the validity of claims and the amount due, it is proper to conclude that the Barring Act is displaced because Section 3702a says if another statute provides for settlement of claims, this law doesn't apply. A statute that authorizes an official to determine the validity and amount due on claims is a statute that authorizes settlement. That is just the definition of settlement that this Court said was well established as of 1916, and nobody thinks has changed in the intervening years. So if there is one, two, or six military statutes that courts will have to read as a result of a victory for Corporal Soto here, that is perfectly appropriate. And that prospect certainly doesn't support not reading the text of Section 1413a literally because of concerns that it might give rise to, you know, more lawsuits in connection with six or seven other statutes or two. To address briefly the retired pay question that you asked, Justice Barrett, of course we did argue below that we don't think that this case involves retired pay. The Federal Circuit disagreed with that. I mean, that, I don't think there could be any more hallmark or clear formulation of the statement that CRSC is not retired pay. That is the words in subsection G of 1413a. That is a pretty obvious way to conclude that Section 3702a-1 does not apply because this is a benefit that is not retired pay, so determination of claims involving this benefit are not determinations involving retired pay. And that would certainly alleviate any other concerns. Although, of course, we do recognize, as my friend did, that that's not part of the question presented as reformulated by this Court. Just to address very briefly the death gratuity statute that my friend mentioned and the statute of limitations, I respectfully take issue with Ms. Flynn's reading of the death gratuity statute. Section 1479, which is the provision which we have read as potentially authorizing settlement, that relates only to immediate payment of death gratuities under Section 1475. It doesn't implicate the statute of limitations. Thank you, counsel. The case is submitted.